CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
AUG 0 5 2005
JOHN F. CORCORAN, CLERK
BY: /s/ Pan Coleman
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| SUSAN HUDGINS, *Plaintiff,* v. DANNY WILLIAMS, *Defendant.* | CIVIL ACTION No. 6:04-CV-00006 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

On May 2–3, 2005, the Court tried this Section 1983 First Amendment case involving an alleged politically motivated refusal to rehire a dispatcher for the Buckingham County Sheriff's Department. For the reasons stated in the following findings of fact and conclusions of law, Plaintiff failed to prove that Defendant's decision not to rehire her was a constitutional violation. Accordingly, the Court shall enter judgment in favor of Defendant.

## I. FINDINGS OF FACT

1.  Plaintiff Susan Hudgins is a former employee of the Buckingham County Sheriff's Department. Defendant Danny Williams is Sheriff of Buckingham County, Virginia.
2.  In the fall of 2003, Buckingham County held a hotly-contested race for county sheriff between Sheriff Garnett Shumaker, the incumbent, and Defendant, the challenger.
3.  At the time of the campaign, Plaintiff held the position of a dispatcher in the Buckingham County Sheriff's Department. Although she was free to make suggestions to Sheriff Shumaker regarding department policies among dispatchers, she was not responsible for establishing or promulgating those policies directly.
4.  On October 31, 2003, twenty-four of Shumaker's employees, including Plaintiff, signed a letter to the editor of the *Farmville Herald* endorsing his reelection campaign. In part, the letter read as follows:
    Any office can work efficiently if the person in charge is a leader and takes the

1

> initiative to better the daily operations and puts the office and staff before his own benefit . . . .
> . . . . Employees of this office stand behind Sheriff Shumaker's values and we eagerly anticipate his continued leadership.

5. Beyond the letter to the editor, most of Shumaker's employees, including Plaintiff, placed campaign signs in their yards and personally encouraging citizens to vote for Shumaker.
6. Many of Shumaker's employees also worked the polls on election day, although Plaintiff did not do so. Instead, she worked a long shift so that other employees from the office could work at the polls if they chose.
7. Throughout the campaign, Plaintiff also spread derogatory personal rumors regarding Defendant. Specifically, Plaintiff spread the rumors that Defendant had cheated on his wife and that he had beat his wife. Plaintiff had no personal knowledge as to the truth of the rumors, but instead was repeating what she had heard from others.
8. Despite the campaign efforts of Plaintiff and other employees of Shumaker, Defendant defeated Shumaker on November 3, 2003.
9. Pursuant to Virginia statute, upon the expiration of a county sheriff's term, the terms of all of his or her employees also expires.
10. After winning the election, Defendant posted a notice advising that he would hold an individual interview with any current Sheriff's Department employee desiring reappointment. Of the twenty-four department employees who had actively supported Shumaker's campaign, eighteen, including Plaintiff, sought reappointment by signing up for a meeting. All meetings were conducted on November 26, 2003.
11. Of the eighteen employees who had originally sought reappointment, seventeen ultimately attended the November 26, 2003 meetings.
12. When meeting with Plaintiff, Defendant commented on Plaintiff's decision to support Shumaker's campaign, and in particular made comments concerning her decision to place yard sign and sign the letter to the editor. Defendant also expressed his belief that Plaintiff had made derogatory personal attacks against him, to the effect that he had cheated on his wife and had beat his wife.
13. After holding the meetings, Defendant decided to rehire thirteen of the seventeen employees that had interviewed. He did not, however, rehire Plaintiff. Defendant also did not rehire three other employees who were originally plaintiffs in this action. Sheriff Shumaker indicated that these four employees had been among his most vocal supporters during the campaign.
14. Subsequent to Defendant's decision, Plaintiff filed this suit along with the three other employees, claiming that Defendant had decided not to rehire her based on her political speech against him in the campaign.
15. Defendant responded that his decision was based on his professional concerns regarding Plaintiff—specifically Plaintiff's attitude on the phone and dispatch radio, her poor attitude during the rehiring interview, and issues concerning her confidentiality. Plaintiff also argued that his decision was based on the fact that she had made derogatory personal attacks against him.
16. Defendant stated that he made notes during the November 26, 2003 interviews indicating

2

his impressions of each of the candidates. Defendant contended that his notes for Plaintiff confirm that his motives for declining to rehire Plaintiff were indeed non-retaliatory. Defendant contended that at this stage, he has only retained the notes for his interview of Plaintiff and of three other parties, who were originally plaintiffs in this action. He contended that he threw the other interview notes away.

## II. CONCLUSIONS OF LAW

17. This Court has jurisdiction over this matter under federal question jurisdiction, 28 U.S.C. § 1331, for an alleged violation of 42 U.S.C. § 1983.
18. Venue is proper in the Western District of Virginia, pursuant to 28 U.S.C. § 1402(a)(1), in Plaintiff resides in Buckingham County in the Western District of Virginia.
19. This Court has personal jurisdiction over the parties in this case because Plaintiff's claims arose out of conduct in the Western District of Virginia.
20. A state generally may not terminate a public employee because of the employee's exercise of speech protected by the First Amendment. *Pickering v. Board of Education*, 391 U.S. 563 (1968).
21. In analyzing a First Amendment claim for retaliatory discharge as described in *Pickering*, three elements must be satisfied: (1) whether the employee was speaking as a citizen on a matter of public concern or rather as an employee about a matter of personal interest; (2) whether the employee's interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public; and (3) whether the employee's speech was a substantial factor in the termination decision. *McVey v. Stacy*, 157 F.3d 271, 277–78 (4th Cir. 1998).
22. As to the first element the claim, whether speech fairly relates to a public concern or expresses a private grievance or a matter of immediate self-interest must be determined by the content, the form, and the context of the speech. *Connick v. Myers*, 461 U.S. 138, 147–48 (1983). The issue is one of law, not fact, for the court to decide. *Id.* at 148 n.7; *Dwyer v. Smith*, 867 F.2d 184, 193 (4th Cir. 1989).
23. Further, the First Amendment does not protect speech regarding "personal grievances, complaints about conditions of employment, or expressions about other matters of personal interest." *Stroman v. Collection County Sch. Dist.*, 981 F.2d 152, 156 (4th Cir. 1992).
24. As to the second element the claim, in balancing the employee's interest in speaking on matters of public concern with the employer's interest in maintaining an effective and efficient workplace, a court must consider the nature of the employee's position, the context of the employee's speech, and the extent to which it disrupts the agency's activity. *McVey*, 157 F.3d at 278.
25. Factors to be considered in the balancing test include whether the speech: (1) "impairs discipline by superiors"; (2) impairs "harmony among co-workers"; (3) "has a detrimental impact on close working relationships"; (4) impedes the performance of the public employee's duties; (5) interferes with the operation of the agency; (6) undermines the mission of the agency; (7) is

3

communicated to the public or to co-workers in private; (8) conflicts with the "responsibilities of the employee within the agency"; and (9) makes use of the "authority and public accountability the employee's role entails." *McVey*, 157 F.3d at 278 (quoting *Rankin v. McPherson*, 483 U.S. 378, 388–91 (1987)).

26. Notwithstanding the general protection of free speech among state employees, an employee is generally exempt from free speech protection "[i]f the position resembles a policymaker, communicator, or a privy to confidential information." *Jenkins v. Medford*, 119 F.3d 1156 (4th Cir. 1987).

27. In determining whether an employee's position is subject to one of these First Amendment exemptions, courts focus on the powers inherent to their particular position, as opposed to the function performed by the particular occupant of that office. *Stott v. Haworth*, 916 F.2d 134, 142 (4th Cir. 1990); *Harter v. Vernon*, 980 F. Supp. 162, 164 (M.D.N.C. 1997).

28. Furthermore, it has been recognized that "it is inherent in the employment relationship as a matter of common sense if not common law that an employee cannot . . . reasonably assert a right to keep his job while at the same time he inveighs against his superiors in public with intemperate and defamatory [remarks]." *Meehan v. Macy*, 392 F.2d 822, 835 (App. D.C. 1968) (en banc).

29. As to the third element of the claim, the burden of proof regarding causation between the parties in a First Amendment discharge case in the following manner. The initial burden lies with the plaintiff, who must show that his protected expression was a substantial or motivating factor in the employer's decision to terminate him. If the plaintiff successfully makes that showing, the defendant may still avoid liability if he can show, by a preponderance of the evidence, that the decision to terminate the plaintiff would have been made even in the absence of the protected expression, more simply, the protected speech was not the but for cause of the termination. *Wagner v. Wheeler*, 13 F.3d 86, 90 (4th Cir. 1993) (internal quotations and citations omitted) (citing *Mt. Healthy City Sch. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 416–17 (1979)).

In this case, the preponderance of the evidence establishes that Plaintiff was a non-policymaking employee of the Sheriff's office, who is fully entitled to the speech protections of the First Amendment. However, Plaintiff has not proven by a preponderance of the evidence that her overtly political speech—namely, putting a campaign sign in her yard, and signing the letter to the editor of the *Farmville Herald*, and generally encouraging friends to vote for Sheriff Shumaker—was a substantial factor in Defendant's decision to not rehire her. Rather, a preponderance of the evidence indicates that a substantial factor for Defendant's decision was his

4

concern about Plaintiff's loyalty and her future ability to respect his authority in light of the judgment she displayed in spreading derogatory personal rumors regarding Defendant during the campaign. Specifically, Plaintiff spread rumors to various people, without knowing the truth or falsehood of such rumors, that Defendant had cheated on his wife and beat his wife.

The Court acknowledges that Defendant's failure to produce interview notes for anyone other than the four employees that originally brought this suit is certainly curious. This failure gives rise to the inference that Defendant actually conceived of a plan to interview the Plaintiff with no intention of hiring her, conjured a list of her professional failings, and then fired her based on that pretextual basis. Nevertheless, even if Defendant did in use such a stratagem, his actions would have no bearing on the final question of whether he committed a constitutional violation. Ultimately, the Court is satisfied that a substantial basis for Defendant's decision was Plaintiff's spreading of derogatory rumors about him, and not her more overtly political acts of signing the letter to the editor, putting a sign in her yard, and encouraging friends to vote for Sheriff Shumaker.

In light of the above findings of fact, as a matter of law Plaintiff cannot establish that Defendant's decision not to rehire her constituted a constitutional violation. The Court acknowledges that Plaintiff's spreading of derogatory personal rumors regarding Defendant may constitute speech that falls within the ambit of free speech protection, and even may qualify, in certain circumstances, as speech on a matter of public concern.[1] However, even assuming

---

[1] The Court acknowledges that in the context of an election, the communication of disparaging personal rumors regarding the character of a candidate are often valuable in making an informed voting decision. For this reason, such speech may be of public concern, and a state

5

*arguendo* that Plaintiff's spreading of derogatory rumors in these circumstances does indeed constitute speech on a matter of public concern worthy of First Amendment protection, Plaintiff cannot demonstrate that Defendant's actions constitute a constitutional violation. A review of the relevant factors in the interest-balancing test indicates that, as a matter of law, Plaintiff's interest in spreading derogatory rumors in these circumstances does not outweigh Defendant's interest in running an effective and efficient workplace. Regardless of the general interest in protecting speech regarding political candidates, it is a matter of common sense that groundless and unverified personal rumors regarding an employer are subject to diminished protection under the First Amendment. At the very best, a state employee's interest in the spreading of derogatory rumors, an act which in many contexts could qualify as libel, is minimal. By contrast, the negative effect of such comments within the sheriff's office are legion. Such spreading of derogatory rumors regarding a supervising sheriff directly undermines the sheriff's ability to impose discipline and harmony in the office, forge strong working relationships with employees, and create an environment in which members of the office can rely on one another when making critical decisions regarding public safety. When such a minimal interest in speech is compared to the substantial adverse consequences that the speech has within the sheriff's office, the harmony of the office must take precedence. Ultimately, common sense alone should tell any public

---

employee may have a strong interest in communicating it. Such circumstances should be distinguished from those of *Hopkins v. Dollinger*, 453 F.Supp. 59, 61 (W.D. Va. 1978), which held that deputies' expressions of opinion that a sheriff was guilty of stealing and perjury are not protected under the First Amendment. Unlike the general and undirected accusations in *Hopkins*, accusatory rumors made in the context of a political campaign may perform the truly public-regarding purpose of providing a character assessment to those people responsible for evaluating the sheriff—namely, citizen voters. For this reason, such rumors may indeed satisfy the threshold requirement for First Amendment protection. *See Monitor Patriot Co. v. Roy*, 401 U.S. 265, 274 (1971).

employee that even during an election campaign, he cannot overtly spread disparaging, unverified personal rumors against his employer and still expect to retain his job. This premise holds true even if the employee makes such comments prior to the election of his new employer. *See Harris v. Wood*, 888 F. Supp. 747, 753 (W.D. Va. 1995) ("A sheriff should hardly be expected to rehire a deputy who has repeatedly called him derogatory names in the presence of the sheriff's former colleagues and future subordinates.").

For the foregoing reasons, Plaintiff has not established that Defendant's actions violated any constitutional right. Accordingly, the Court will enter judgment in favor of Defendant.

An appropriate Order shall issue.

ENTERED: _____
U.S. District Judge

_8-5-2005_
Date